**In re the Marriage of Roman Jan GORZ, petitioner, Respondent,**

v.

**Nancy Laura GORZ, Appellant.**

**No. C9–88–404.**

Court of Appeals of Minnesota.

Sept. 6, 1988.

D. Patrick McCullough, McCullough, Dyrud & Smith, St. Paul, for petitioner, respondent.

Lawrence D. Olson, St. Paul, for appellant.

Considered and decided by NIERENGARTEN, P.J., and FOLEY and SCHUMACHER, JJ., without oral argument.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment and dissolution decree and an order denying the respondent father's motion for amended and additional findings or a new trial. The appellant mother contends the district court's custody and property division decisions are not supported by the evidence. We affirm.

## FACTS

Roman Gorz and Nancy Gorz were married in May 1977. Their children were four and one-half and six years old at the time of the hearing. Roman and Nancy both worked full-time during the marriage; Roman also worked a second job during much of that time as part-owner of a snow removal company. Nancy performed most of the parenting tasks and was the primary caretaker until December 1985 when she told Roman she wanted a divorce. The parties do not dispute that at that time Roman began to assume parental responsibilities and perform many of the day-to-day household and parenting chores.

The parties separated in mid-July 1986 and Roman commenced this dissolution action in August 1986 seeking an order awarding the parties joint legal custody but awarding Nancy physical custody. After Nancy moved the court for an order granting her use of the homestead, support and physical custody of the children, Roman filed an amended petition requesting physical custody of the children and occupancy of the parties' homestead. The case was referred to court services for mediation of the custody dispute and a custody evaluation. The referee subsequently issued an order for temporary relief recommending that Roman be awarded temporary physical custody and use of the family household. Nancy filed a notice of review.

The family court referee conducted a second hearing on February 13, 1987 after court services submitted its custody report. A family court officer recommended in the report that custody be awarded to Nancy. However, the referee declined to modify the temporary order noting that the court determined "at the time of the commencement of the proceedings, * * * that the father [Roman] was the primary parent at that time." The district court judge affirmed the referee's order for temporary relief.

The trial was held in October 1987. Several witnesses testified about Roman's and Nancy's involvement with their children during the time period from December 1985 to July 1986 when the Gorzes separated. A licensed consulting psychologist testified that the children "are fairly positively attached with both parents." The psychologist believed "Mr. Gorz has been functioning as the primary parent since their separation in—since 1985." The psychologist recommended that "both parents share joint legal custody, as well as physical custody," that Roman have physical custody of the children during the school year, and that Nancy have physical custody during the summer.

A pediatric psychologist testified that Nancy was more interactive with the children and demonstrated a greater capacity for meeting the children's emotional developmental needs. The psychologist stated Roman "is a good parent," but recommended Nancy be granted physical custody of the children.

The court services officer who prepared the custody evaluation did not make any findings about which parent was the primary caretaker at the time of the separation. The officer concluded the children "seemed very comfortable" with both parents but recommended Nancy be granted physical custody because "Nancy has fulfilled the role of primary caretaker for most of the children's lives."

The district court found that Nancy "is a fit and proper person" to have custody of the children and "has been the primary caretaker of the children until December of 1985." However, the court also stated:

> While the Court finds the Respondent [Nancy] to have used illegal drugs, been involved with drinking to intoxication, inappropriate visitation with male companions and substantial late night partying with friends, all these factors do not appear to have had a substantial impact in Respondent's relationship with her children except as it reflects a substantially diminished role in parenting the children.

According to the court, Nancy's "interest in parenting changed substantially and waned considerably following December of 1985."

The court found Roman also "is a fit and proper person to have custody of the two minor children" and stated Roman "became the primary caretaker of the two children beginning in December of 1985 through July of 1986, which was the date of the separation of the parties." The court concluded:

> [T]he best interests of the children appear better served in preserving the stability of the childrens' relationship in the home, school and community as they have enjoyed with the Petitioner [Roman] during the past year. While the Petitioner appears to have changed his entire life in order to dedicate himself to his children, providing for stability in their church, school and home, the Respondent [Nancy] appears much less interested and more inclined to dedicate herself to herself.

The court awarded the parties joint legal custody but awarded Roman primary physical custody during the school year subject to Nancy's right of "reasonable visitation." Nancy was awarded primary physical custody from June 1 through August 31. Following Nancy's post-trial motions, the court made minor changes in visitation schedules.

Nancy appeals, asserting the district court's findings and conclusions on custody and its determination about the nonmarital portion of the parties' homestead downpayment are not supported by the evidence or law.

## ISSUES

1. Did the district court abuse its discretion by awarding the parties joint physical custody of the children?

2. Did the district court abuse its discretion in determining the appellant's nonmarital interest in the parties' homestead?

## ANALYSIS

### 1. Custody

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law.

*Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

"The trial court's findings must be sustained unless clearly erroneous." *Id.* In determining whether the district court abused its discretion in awarding joint physical custody, this court must determine whether the district court's written findings "properly reflect its consideration of the factors listed in Minn.St. 518.17, subd. 1." *See Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976). The findings "as a whole" must indicate the district court considered the relevant statutory factors. *See id.* at 83, 249 N.W.2d at 172.

In addressing child custody issues, the court must consider several statutory factors to determine the child's "best interests." *See* Minn.Stat. § 518.17, subd. 1 (Supp.1987). The best interests of the child includes preservation of "the intimacy of the relationship between the primary parent and the child." *Pikula*, 374 N.W.2d at 711.

The court's findings indicate consideration of the statutory factors did not necessarily favor one parent over the other, but indicated Roman would provide a more stable environment with respect to home, school, and community.

In *Pikula* the supreme court stated primary caretaker status should be established by determining "which, if either, parent was the primary caretaker of the chil-

dren at the time the dissolution proceeding was commenced." *Id.* at 714.

The phrase "at the time the dissolution proceeding was commenced" is used to indicate the point in time at which the family relationships were *physically disrupted* by events leading to the dissolution of the marriage, e.g., at the time of the parties' separation or the interruption of the functioning full family unit.

*Id.* at 714 n. 3 (emphasis added).

■ There is little dispute that Roman assumed more parental and caretaking duties in mid-December 1985 when Nancy told Roman she wanted a divorce. The family relationship was not "physically disrupted" until July 1986 when Roman and Nancy separated. The record shows Roman took a renewed interest in his children in December 1985 and thereafter routinely performed caretaking duties. *See id.* at 713–14 (the court listed several factors indicating primary caretaker status). The record indicates Nancy's involvement with these types of caretaking activities diminished after December 1985. Under the circumstances, the evidence in the record supports the district court's conclusion that Roman was the primary caretaker of the children in July 1986 when the family relationship was "physically disrupted."

■ Even though the court found Roman was the primary parent, the court awarded the parties joint legal and physical custody.

[W]here either joint legal or joint physical custody is contemplated or sought, the court shall consider the following relevant factors:

(a) The ability of parents to cooperate in the rearing of their children;

(b) Methods for resolving disputes regarding any major decision concerning the life of the child, and the parents' willingness to use those methods; and

(c) Whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing.

The court shall use a rebuttable presumption that upon request of either or

both parties, joint legal custody is in the best interests of the child.

Minn.Stat. § 518.17, subd. 2 (1986).

The district court's judgment indicates the court considered the factors listed in section 518.17, subdivision 2. The record indicates Roman and Nancy generally agree about the children's upbringing and can cooperate and communicate about matters involving the care and upbringing of their children. The record also indicates both parents are able to perform parenting duties and that the children have positive relationships with both parents and will benefit from spending extended periods with each parent. The record does not show that Roman was an inadequate parent, and both psychologists and the court services officer testified that Roman was a good parent. Accordingly, we cannot conclude the district court abused its discretion by awarding the parties joint legal and physical custody.

### 2. Property Division

█ Nancy alleged she contributed a $1,500 gift from her mother and $2,000 from a premarital savings account toward the purchase of the parties' homestead. She asserts the district court abused its discretion by failing to acknowledge her alleged $2,000 nonmarital interest in the parties' homestead and asserts the court incorrectly calculated her nonmarital interest in the property.

Nancy must show by a preponderance of the evidence that this gift and savings are readily traceable to a nonmarital source. *Hafner v. Hafner*, 406 N.W.2d 590, 593 (Minn.Ct.App.1987). She must show the assets were property she acquired before her marriage or gifts she received during her marriage. *See* Minn.Stat. § 518.54, subd. 5 (Supp.1987). Nancy had no documentation to prove the nonmarital status of the $1,500 gift or the nonmarital status of the $2,000 in savings. Since Nancy did not support her allegations about the $2,000 contribution with documentary evidence or otherwise conclusively prove her claim, we cannot conclude the district court abused

its discretion by failing to acknowledge that alleged contribution.

The trial court is accorded broad discretion in dividing property on dissolution of a marriage, and its decision will not be overturned on appeal except for a clear abuse of discretion.

*Stevens v. Stevens*, 300 N.W.2d 1, 1 (Minn. 1980).

█ Nancy asserts the court erroneously calculated her interest in the homestead property which is payable upon sale of the property. The court determined Nancy contributed her $1,500 gift as part of the downpayment and that $1,500 of the downpayment was nonmarital. The court awarded Roman "all right, title, and interest" in the homestead subject to all encumbrances, mortgages and taxes, and "subject to an interest-free lien in favor of [Nancy]." The district court ruled that the parties' respective interests in the homestead property would be determined at the time of the sale of the homestead after the following items were deducted from the fair market value of the property: (1) the balances of existing encumbrances, (2) financing costs related to the sale, (3) brokers' commissions, (4) special assessments, (5) Nancy's $1,500 nonmarital interest, (6) certain repair and improvement costs, and (7) the amount of the reduction in the mortgage principal paid by Roman from November 1, 1987 to the date of sale.

Nancy contends the district court erred by failing to award her an increase in the amount of her $1,500 contribution commensurate with the increase in the value of the homestead property. In *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981), the supreme court approved an analytical method for calculating the present value of a nonmarital asset based on the increased value of the property purchased with the asset. The appellant in *Schmitz* would have received approximately $1,000 more if the trial court would have precisely followed a formula established in a Kentucky case which was approved by the Minnesota Supreme Court. The court noted the discrepancy was only $1,000 and stated:

Given this minimal discrepancy in an area of law committed in large part to the discretion of the trial court we are

not persuaded that any reversible error occurred. *Id.* at 750.

Application of the district court's formula results in a payment to Nancy which is approximately two to three hundred dollars less than she would receive under the *Schmitz* formula. Given the district court's "broad discretion in dividing property on dissolution of marriage" and the relatively minimal discrepancy, we cannot conclude the district court abused its discretion or committed reversible error in calculating Nancy's nonmarital interest in the homestead property. *See Schmitz*, 309 N.W.2d at 750.

DECISION

The district court correctly concluded the respondent was the primary caretaker because the record shows the respondent was performing most of the parenting responsibilities when the parties' family relationship was "physically disrupted." The court did not abuse its discretion by awarding the parties joint legal and physical custody because the record shows the parties could cooperate and resolve disputes over child rearing decisions, and because the children's best interest would be served by awarding the parties joint physical custody.

The court did not abuse its discretion in classifying the marital portion of the parties' property or in calculating the appellant's nonmarital interest in the parties' homestead.

The respondent's request for attorney fees is denied because he failed to address that issue in his brief or by separate motion and the record contains no evidence of factors justifying an award for attorney fees. *See* Minn.Stat. § 549.21, subd. 2 (1986). The respondent's request for costs will be considered, provided he serves and files a notice of taxation within fifteen days after the filing of this decision. *See* Minn.R.Civ.App.P. 139.01–.03.

AFFIRMED.